## SUPREME COURT.

### JOHN OSTELL agt. WILLIAM BROUGH.

Where consignments of lumber are made by the consignor to the consignee under a contract between them that the consignee is to sell the same on *commission*, at eight per cent., which is to include a premium for *guaranty of sales*, and to account for the net proceeds, after deducting charges and commissions, the consignee acts in a *fiduciary capacity*, and is liable to *arrest* for not paying over the proceeds received from purchasers.

*It seems*, that where the purchaser does not pay, and the consignor or owner of the lumber sues the consignee for the price upon the *contract of guaranty*, the latter is to be considered as a *mere debtor*, and not liable to arrest.

*Albany Special Term, April,* 1860.

MOTION by defendant to vacate order of arrest or reduce the amount of bail, which was originally fixed at $10,000.

W. A. BEACH, *for defendant.*
IRVING BROWN, *for plaintiff.*

HOGEBOOM, Justice.   The defendant moves, upon the pleadings and papers in this action, to vacate the order of arrest, or, if that be denied, to reduce the amount of bail.

The plaintiff was a lumber dealer in Montreal, and according to the defendant's answer consigned lumber to the defendant at West Troy, to be by him sold on commission, such commission being eight per cent., which included a premium for guaranteeing sales, and to account for the net proceeds, after deducting charges and commissions.

Independent of the question of guaranty, money received by the defendant for sales made under such an agreement, was, according to several adjudications, money received by a person in a fiduciary capacity, and rendered the party liable to arrest for misappropriating it. (*Frost* agt. *McCarger*, 14 *How.*, 131; *Stoll* agt. *King*, 8 *How.*, 298;

Ostell agt. Brough.

*Holbrook* agt. *Homer*, 6 *How.*, 86 ; *Turner* agt. *Thompson*, 2 *Abbott*, 444 ; *Schudder* agt. *Shiells*, 17 *How.*, 420.)

Is the relation of the parties in this particular substantially altered by the fact that the consignee guarantees the sales made by him, receiving an additional compensation therefor ? Is he any the less the consignee of the lumber, receiving it for the purpose of sale, and bound to account for the proceeds ? It is true the consignor has an additional security in the personal responsibility of consignee for the sales made ; but I think that circumstance does not destroy the fiduciary relation. The property sold is still, until sold, the property of the consignor ; and when sold, the proceeds of the sale belong to him. If received by the consignee, he is bound, according to his own statement of the contract, to return or account for them to the consignor ; and so bound I think by the obligations of this peculiar relation. He received the goods upon the special trust and confidence that he would do so ; and he receives an extra compensation for making the sales to trustworthy and responsible purchasers. Where the purchaser does *not* pay, and the vendor (the original owner) sues the consignee for the value or price upon the contract of guaranty, it may be that he is to be treated as a mere debtor, and not liable to arrest ; but where the purchaser does pay, and the proceeds of sale come into the hands of the consignee, I think he holds them as a trustee for his principal, and is subject to arrest for their misappropriation. Suppose by the conditions of the sale the purchaser had agreed to pay, and had paid in certain commodities, instead of money, is there any doubt that if the defendant had received them, he would hold them for the benefit of the plaintiff, and that they would belong to the latter, and would be recoverable by him under the terms of the original fiduciary relation ? I think this is the most fair and reasonable construction of the contract between the consignor

and consignee, and that the contract of guaranty is merely superadded to the other and does not destroy the fiduciary relation, unless it be in the single case where the vendor prosecutes upon the guaranty.

As to that part of the application which seeks to reduce the bail, I confess to some difficulty in ascertaining the true amount which the plaintiff will be entitled to recover. The parties are directly at issue on this point, and the evidence is sufficient I think, on this preliminary investigation, to entitle the plaintiff to such security as an order of arrest will give him, to the amount of $8,000. The bail may be reduced to that amount. The cost of making and opposing the motion may abide the event of the action.